The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD TIMM, an individual, *et al.*, Plaintiffs, <br><br> v. <br><br> SEATTLE CHILDREN'S HOSPITAL, a Washington non-profit corporation, *et al.*, Defendants. | NO. 2:24-cv-1570 <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS FILED BY DEFENDANTS SEATTLE CHILDREN'S HOSPITAL AND JEFFREY OJEMANN AND REMANDING CASE TO KING COUNTY SUPERIOR COURT** |

### I.   INTRODUCTION

This matter comes before the Court on Motions to Dismiss Plaintiffs' Second Amended Complaint, filed respectively by: (1) Defendants State of Washington, UW Physicians, Children's University Medical Group, Peter Esselman, Greg Kinney, Jonathan Perkins, and Samuel Browd ("UW Defendants"); and (2) Defendants Seattle Children's Hospital ("Seattle Children's" or "SCH") and Jeffrey Ojemann. Dkt Nos. 27 & 29. Plaintiff Periphery Neurophysiology, LLC ("Periphery") and its owners, Plaintiffs Donald Timm and Reed Wiman (collectively, "Plaintiffs") oppose the motions. Having considered the briefs filed in support of and in opposition to both motions, the Court dismisses the single federal claim against Seattle Children's, the sole basis for

ORDER RE: MOTIONS TO DISMISS

- 1

this Court's removal jurisdiction; declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims; and remands this matter to King County Superior Court, wherein it was originally filed. The Court's reasoning follows.

## II.     BACKGROUND[1]

<u>The IONM Services Agreement</u>

Plaintiffs Timm and Wiman are certified surgical neurophysiologists, or technologists trained in intraoperative neurophysiological monitoring ("IONM"). Sec. Am. Compl. ("SAC"), Dkt. No. 25, ¶ 23. IONM refers to a set of procedures "used to identify and monitor the neural pathways of a patient during surgery in order to prevent damage to the nervous system," and "is commonly used during certain neurological, orthopedic, peripheral nerve, and vascular surgeries," which pose a risk for such damage. *Id*. ¶ 21. Generally speaking, the IONM procedures involve a neuromonitoring technologist (*e.g.*, in this case, Timm or Wiman) and an oversight professional, also referred to as an "interpreting practitioner." The technologist "performs the patient setup, runs the modalities, and acts as a liaison for the interpreting professional," while the oversight professional "supervises the work of the technologist, interprets the data in real time, [and] communicates any significant findings to the surgeon." *Id*., ¶ 22. According to Plaintiffs, an IONM oversight professional is engaged in the practice of medicine, and thus must be a licensed physician or audiologist, or otherwise authorized to perform the IONM oversight function.[2] *Id*., ¶¶

---

[1] The Court relies on the allegations in the Second Amended Complaint and documents explicitly referenced therein, which Defendants have attached as exhibits to their motions. Such material is properly considered on a motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.2003).

[2] Plaintiffs allege that according to the American Medical Association ("AMA"), the "supervision and interpretation of intraoperative neurophysiologic monitoring constitutes the practice of medicine," but such function "can be delegated to non-physician personnel who are under the direct or online real time supervision of the operating surgeon or another physician trained in, or who has demonstrated competence in, neurophysiologic techniques and is

ORDER RE: MOTIONS TO DISMISS

- 2

47-51.

For over 25 years, Seattle Children's had contracted for IONM services through the Division of Neurophysiology at the University of Washington ("UW"), which provided both IONM technologists and oversight professionals. Plaintiffs learned, however, that the UW providers were unable to meet the demands of SCH's caseload and that SCH was seeking a new contractor to provide "overflow" IONM services. *Id.*, ¶ 24. On or about September 15, 2020, Seattle Children's and Periphery Neurophysiology entered into a "Clinical Services Agreement for Surgical Neuromonitoring Services" ("Agreement"). SAC, ¶ 151; *see* Coopersmith Decl., Dkt. No. 30, Ex. A. Under the Agreement, Periphery would provide on an as-needed basis the IONM technologist, and either Periphery or SCH would contract for the interpreting practitioner to oversee that technologist. SAC, ¶ 30; Agreement, Ex. A, ¶ 1.b.

The Agreement, which created a two-year term, contained a "non-exclusivity" clause, which explicitly provided that "[n]othing in this Agreement shall be construed to . . . guarantee [Periphery] will provide Services at Seattle Children's, unless the parties have mutually determined Services are necessary." Agreement, ¶ 2.4.[3] In January 2021, however, UW gave SCH notice that it intended to terminate its IONM services agreement with the hospital, and SCH asked Periphery whether it would be willing to fill the vacancy by providing all the IONM services that SCH required. SAC, ¶¶ 37-38. Periphery agreed that going forward it would be willing to take on

---

available to interpret the studies and advise the surgeon during the surgical procedures." SAC, ¶ 50 (citing AMA Policy H-410.957).

[3] The Agreement did guarantee Periphery payment for a minimum of 52 procedures every six months, which the parties do not dispute Periphery received. *See* Agreement, Ex. A, ¶ 2.b. In fact, "Periphery provided coverage for 640 surgeries during the two-year term of the "overflow" agreement." SAC, ¶ 146.

ORDER RE: MOTIONS TO DISMISS

- 3

a greater share of SCH's IONM needs, providing both the technologists and the oversight professionals as needed. However, a group of SCH surgeons (including several individual Defendants named in this lawsuit) "insisted on continuing to use the UW providers for oversight rather than having Periphery contract with its oversight providers." *Id*. ¶ 40.

Periphery's Concerns About UW Ph.D. Oversight Providers

Plaintiffs allege that this arrangement raised some concerns, and "as a matter of prudence, [Timm] felt that he should make further inquiries and verify" that the UW oversight professionals, who held Ph.D.s rather than medical degrees, "had the necessary qualifications and credentials to provide professional oversight to the technologists in his own company." SAC, ¶¶ 1, 45. Plaintiffs allege that after some inquiry, Timm "discovered that the UW Ph.D.'s were not authorized by the State of Washington to provide the services they were providing and, in fact, were providing them in violation of state law." *Id*. ¶ 46. Plaintiffs claim that in addition to lacking the allegedly required medical degree and licensing or other qualifications, the UW oversight professionals also failed in certain instances to meet minimum standards of care, including that they provide "continuous direct oversight" of the technologists during the IONM procedures. *See, e.g.*, Coopersmith Decl., Ex. B., 6/14/2022 letter from Timm to SCH ("On June 6th, 2022, one of the [UW] Interpreting Practitioners provided by Children's performed on-site interpretation for two concurrent procedures, effectively abandoning interpretation of one procedure in favor of the other.").[4]

---

[4] Defendants deny that UW's IONM oversight professionals lacked the necessary qualifications and/or licensing, and that their actions fell below the minimum standard of care, but for purposes of these motions, the Court takes Plaintiffs' allegations on these points as true.

ORDER RE: MOTIONS TO DISMISS

- 4

Timm brought his concerns about the qualifications and performance of UW's oversight professionals to various SCH surgeons and administrators, and ultimately its Surgeon-in-Chief (later Chief Medical Officer), Defendant Jeffrey Ojemman. Ultimately, finding Seattle Children's response to his concerns inadequate, on June 14, 2022, Timm delivered to SCH a written "formal notice of material breach." Coopersmith Decl., Ex. B. In that notice, Timm asserted that SCH was in violation of Section 3.1 of the Agreement, which provided that Seattle Children's would provide Periphery "support personnel as reasonably necessary to support the safe and effective delivery" of IONM services. *Id*. He requested that "Children's provide proof of qualifications for each Interpreting Practitioner supplied by Children's" and "immediate remedy of the breaches" set forth in the notice. *Id*.

The response from Seattle Children's was that it disagreed "that a breach has occurred as it pertains to oversight by UW providers." Coopersmith Decl., Ex. C, 7/1/2022 letter from Ojemann to Timm. It offered to accommodate Plaintiffs' concerns, however, by allowing Periphery to select the oversight professional for any procedure in which Periphery would be supplying the technologist. In other words, "UW providers will not serve as Interpreting Practitioners in cases that Periphery is supporting." *Id*. Ojemann also acknowledged, however, that in approximately 10% of the IONM cases performed at SCH, surgeons continued to prefer to work with UW oversight professionals. Coopersmith Decl., Ex. E ("[W]e respect the independent professional judgment of surgeons who prefer to work with UW neurophysiologists."). Ojemann assured Periphery that it would not be required to staff the technologists on those procedures, and that SCH would enlist a different (i.e. non-Periphery) IONM technologist to support the UW oversight provider. As Ojemann noted in an August 30, 2022 letter to Timm, "[t]he practical

ORDER RE: MOTIONS TO DISMISS

- 5

effect is that Periphery now supports about 90% of the IONM services at Seattle Children's," and during those procedures would be supported by oversight professionals of Periphery's choosing. Coopersmith Decl., Ex. E.

### Negotiations Concerning Renewal of the SCH-Periphery Agreement

During the spring and summer of 2022, SCH and Periphery engaged in efforts to extend their IONM services contract, set to expire on September 15, 2022, even as they continued to disagree about the adequacy of care provided by the UW oversight professionals. In late August, Ojemann represented to Timm that "Seattle Children's continues to want to renew the Agreement with Periphery. . . . Please advise if Periphery is amenable to continuing services under these terms," that is, allowing Periphery to select the oversight providers that its technologists would be working with, while allowing UW oversight professionals to continue supporting surgeons who chose to work with them, "and we will forward you a draft amended and restated Agreement for review." Coopersmith Decl., Ex. E. In the end, however, Plaintiffs were dissatisfied with allowing SCH to continue using UW oversight professionals that Periphery considered unqualified, despite Ojemann's representation that Periphery technologists would never have to work with them. Timm responded to Ojemann's offer, just days before the two-year term of the Agreement was set to expire, "[w]e do not believe continuing our business relationship at this time is appropriate. As stated previously, our service is set to expire on 9/15/2022. We will cover procedures to this date, but not beyond." Coopersmith Decl., Ex. F, 9/9/2022 letter from Timm to Ojemann.

The parties did not renew their agreement, and Plaintiffs filed this lawsuit approximately two years later in King County Superior Court. Plaintiffs have asserted seven counts against various Defendants, including breach of contract, breach of the covenant of good faith and fair

ORDER RE: MOTIONS TO DISMISS

dealing, tortious interference with contract and with business expectancy, and retaliation in violation of Washington false claims statutes. Based upon a single federal claim against Seattle Children's—for retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h)—Defendants timely removed the state court action to this Court, asserting federal question and supplemental jurisdiction.

### III. DISCUSSION

#### A. Standard on Motion to Dismiss

A defendant may move to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citations omitted).

The court is required to presume that all well-pleaded allegations are true, to resolve all reasonable doubts and inferences in the pleader's favor, and to view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). However, a court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are

ORDER RE: MOTIONS TO DISMISS

- 7

merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); Fed. R. Evid. 201(b).

### B. Whether Plaintiffs Have Stated a Claim for Retaliation Under the Federal False Claims Act, 31 U.S.C. § 3730(h)

Count VI posits a claim against Seattle Children's under the federal False Claims Act (FCA) for retaliation against protected activity.[5] The FCA imposes liability for making a "false or fraudulent claim[ ] for payment" to the federal government. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 411 (2005) (citing 31 U.S.C. § 3729(a)). The FCA also protects those "who come forward with evidence their employer is defrauding the government"—that is, whistleblowers—from retaliation. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (citation omitted). The FCA protects "[a]ny employee" from being "discharged . . . because of lawful acts done by the employee . . . in furtherance of an [FCA] action . . . or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). An FCA retaliation claim requires proof of three elements: (1) "the employee must have been engaging in conduct protected under the Act"; (2) "the employer must have known that the employee was engaging in such conduct"; and (3) "the employer must have discriminated against the employee because of her protected conduct." *Mooney v. Fife*, 118 F.4th 1081, 1088–89 (9th Cir. 2024) (citations omitted). Seattle Children's argues that Plaintiffs have failed to allege facts sufficient to support any of the elements of their FCA whistleblower claim.

After careful review of the Second Amended Complaint and the documents referenced

---

[5] The Second Amended Complaint also asserts this claim against Defendant Children's University Medical Group, but Plaintiffs voluntarily withdrew this claim as to this Defendant only. *See* Pls.' Opp. at 9, Dkt. No. 33.

ORDER RE: MOTIONS TO DISMISS

- 8

therein (and filed in support of SCH's Motion to Dismiss), the Court concludes that Plaintiffs have failed to allege that Seattle Children's took any action constituting "discrimination" or retaliation against them.[6] In that Complaint, Plaintiffs allege that SCH "retaliated and discriminated against Mr. Timm, Mr. Wiman, and Periphery (their company) by, among other ways, harassing them; removing them from IONM cases involving the UW Ph.D.s; and refusing to renew the contract with Periphery to provide IONM technologist services." SAC, ¶ 230. But the actual allegations in the Complaint, and the undisputed evidence in the correspondence between Timm and SCH, conclusively demonstrate otherwise.

First, there is no allegation supporting the claim that Ojemann, or anyone else at Seattle Children's, "harassed" the Plaintiffs. In their Opposition to SCH's Motion to Dismiss, Plaintiffs fail even to argue otherwise.

Second, the undisputed evidence demonstrates that SCH did not "remove" Plaintiffs "from IONM cases involving the UW Ph.Ds." After Plaintiffs expressed concerns about the qualifications and performance of the UW Ph.D.s, SCH (which disputed Plaintiffs' complaints) proposed "[t]ransition of intraoperative neuromonitoring (IONM) oversight for ENT/nerve mapping cases primarily to Periphery providers." Coopersmith Decl., Ex. C, 7/1/22 letter from Ojemann to Timm; *see also id*., Ex. E., 8/30/22 letter from Ojemann to Timm (in response to Timm's complaints about UW providers, "we transitioned oversight primarily to Periphery Providers so that UW oversight providers do not serve as Interpreting Practitioners in cases that Periphery supports."). The effect of this accommodation may have been a 10% reduction in

---

[6] Because the FCA claim fails on this third element, the Court does not reach the sufficiency of allegations as to the other two.

ORDER RE: MOTIONS TO DISMISS

- 9

Periphery's caseload,[7] but it cannot fairly be characterized as a retaliatory act. It was a consequence of Plaintiffs' refusal to work with the UW oversight professionals, combined with the fact that, in Plaintiffs' own words, "a few SCH surgeons insisted on continuing to use the UW providers for oversight rather than having Periphery contract with its oversight providers." SAC, ¶ 40. There is no evidence, or even allegation, that the reduction occurred at SCH's request or direction.[8]

Third, and similarly, Plaintiffs attempt to characterize their refusal to renew the IONM services agreement as a retaliatory act committed by SCH. This specious characterization is also not supported by the allegations. On August 30, 2022, Ojemann offered, in writing, to renew the parties' contract, under circumstances in which Periphery would not have to perform services with the UW providers they objected to. As quoted above, he wrote:

> Seattle Children's continues to want to renew the Agreement with Periphery. We have engaged in this dialogue in good faith, reviewing Periphery's concerns and addressing those found to warrant changes. We continue to offer an "open door" for you to share any unaddressed issues in this regard or any other future quality and safety concerns. We consider the outstanding issues resolved in the current state. Please advise if Periphery is amenable to continuing services under these terms and we will forward you a draft amended and restated Agreement for review. Coopersmith Decl., Ex. E.

Timm's response was unequivocal: "[w]e do not believe continuing our business relationship at this time is appropriate." *Id*., Ex. F. Plaintiffs' attempt to characterize *their* decision to abandon contract negotiations as a retaliatory act *by SCH* is unsubstantiated and

---

[7] It bears repeating that the original "overflow" Agreement expressly disclaimed that Periphery was entitled to any specific percentage of SCH's cases, apart from the 52 cases every six months that it was undisputedly paid for.
[8] At most, SCH refused Plaintiffs' demand to force its surgeons to use non-UW oversight professionals. Plaintiffs' attempt to characterize this purported failure to act as retaliatory is illogical and unsupported.

ORDER RE: MOTIONS TO DISMISS

- 10

implausible. While at this stage the Court is required to presume that all well-pleaded allegations are true and to view the pleading in the light most favorable to Plaintiffs, it is not "required to accept as true . . . unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998. In the absence of facts supporting the retaliatory act element of an FCA whistleblower claim, Plaintiffs' sole federal claim against SCH must fail and is hereby dismissed.[9]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Seattle Children's and Jeffrey Ojemann's Motion to Dismiss as to Count VI. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims, all of which were brought under state law. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (citing 28 U.S.C. § 1367(c)(3) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion.")). This matter is hereby remanded to King County Superior Court, from which it was removed.

DATED this 26th day of March, 2025.

*/s/ Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[9] Because Plaintiffs have not made out a prima facia case with respect to this third element of an FCA whistleblower claim—that is, a retaliatory act—the *McDonnell Douglas* burden-shifting scheme, adopted by the Ninth Circuit for whistleblower claims under the FCA, does not come into play. *Mooney v. Fife*, 118 F.4th 1081, 1089 (9th Cir. 2024) ("[O]nce the employee has established a prima facie case of FCA retaliation, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for the employee's termination."). In other words, the Court does not reach the question whether SCH's explanation for a retaliatory act was pretextual, because Plaintiffs have failed to allege a retaliatory act at all.

ORDER RE: MOTIONS TO DISMISS